MW

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marisol Mendoza,<br><br>                Petitioner,<br><br>v.<br><br>William Barr, et al.,<br><br>                Respondents. | No. CV-20-00514-PHX-SPL (MTM)<br><br>**ORDER** |

Petitioner Marisol Mendoza (A# 206-453-577) has filed, through counsel, a Renewed Motion for Temporary Restraining Order (Doc. 43). The Motion has been fully briefed by the parties and, as follows, will be granted in part.

**I.  Background**

Petitioner is a native and citizen of Mexico who is detained in the custody of United States Immigration and Customs Enforcement ("ICE") in the CoreCivic Eloy Detention Center ("EDC") in Eloy, Arizona.  In April 2020, she filed an Amended Petition (Doc. 19) in which she claimed, among other things, that she suffers from several medical conditions, including diabetes, which places her at a heightened risk of severe illness and death if she contracted COVID-19; she faced an acute and immediate risk of contracting COVID-19 in EDC because reasonable preventative and remedial measures had not been implemented; and her release from custody was the only effective means to abate the risk of contracting COVID-19 and suffering serious bodily harm or death as a result.

On May 19, 2020, the Court granted the Amended Petition in part and ordered

Respondents to take immediate remedial action with respect to the conditions under which Petitioner was detained. (Doc. 37.)[1] Among other measures, the Court ordered Respondents to provide Petitioner with daily scheduled medical examinations at which her temperature was to be taken and she was to be screened for CDC-recognized COVID-19 symptoms, and in the event she exhibited symptoms, Respondents were to promptly administer a COVID-19 test and provide Petitioner's counsel with notice and the test results. Should Petitioner require further treatment or medical care, Respondents were required to maintain open communication with Petitioner's counsel and provide counsel with reasonable status updates.

After several weeks of modified conditions, over which the parties have various disputes, on June 5, 2020, Petitioner complained of body aches, a headache, and a sore throat, and was administered a COVID-19 test. On June 6, 2020, she had tachycardia and shortness of breath and was taken to Banner Casa Grande Medical Center. There, Petitioner was administrated a second COVID-19, diagnosed with a urinary tract infection, prescribed an antibiotic, and discharged shortly after midnight. Petitioner was then returned to EDC and placed in medical isolation in Bravo 600 East. On June 8, 2020, Petitioner's COVID-19 test results came back positive. Respondents indicated that "because [Petitioner] has tested positive for COVID-19, she will remain housed in Bravo 600 East . . . until she is symptom free for at least 72 hours, at which point she will be moved to a single cell in a recovery housing location for an additional 14-days before being returned to a single cell in a general population unit." (Doc. 45-3, Figueroa Decl. ¶ 49.)

. . . .

---

[1] In doing so, consistent with the parties' briefing, the Court adopted and incorporated the findings and reasoning set forth in *Urdaneta v. Keeton,* CV-20-00654-PHX-SPL (JFM) (D. Ariz. May 11, 2020), thereby holding: (1) Petitioner's claims for relief were cognizable for review under 28 U.S.C. § 2241, and alternatively, 28 U.S.C. § 1331, as an equitable cause of action under the Constitution; (2) Petitioner had Article III standing; and (3) Respondents' had failed to take reasonable, necessary, and available measures to abate the risk of harm to high-risk detainees, and the conditions under which Petitioner was detained amounted to punishment and violated the Due Process Clause of the Fifth Amendment.

## II. Motion for Temporary Restraining Order and Preliminary Injunction

Petitioner claims that she is not being closely monitored and receives only one medical examination a day; medical staff do not consistently or thoroughly examine her to monitor the progression of her illness; and medical staff has not increased monitoring or treatment of Petitioner despite her worsening symptoms, including body aches, fatigue, a cough, and pressure in her chest. She asks the Court to order her immediate release from detention into the care of her daughter, Leslie Rosales Mendoza, who is a certified medical assistant.

In response, Respondents report that Petitioner receives daily follow-ups with nursing staff and daily medical screening (Doc. 45-2, Peredo-Berger Decl. ¶ 9); she "is treated according to existing clinical criteria with acetaminophen, fluids, and rest, unless a higher level of care requiring hospitalization is indicated" (Figueroa Decl. ¶ 20); she is provided "access to hot water from the sink faucet in her cell" (*id.* ¶ 25); "[p]er normal operations, [Petitioner] continues to receive hygiene products twice weekly" (*id.* ¶ 34); Petitioner is provided "with ice and water upon request" (*id.* ¶ 40); and Petitioner is permitted to shower in one of the four showers unavailable in her unit between 7:00 a.m. and 8:00 p.m. on Mondays, Wednesdays, and Fridays (*id.* ¶¶ 28-30).

Respondents argue that: (1) Petitioner's continued detention in medical isolation at EDC will not cause her irreparable harm because of her lack of COVID-19 symptoms, the fact that she is being monitored daily by health care providers, and the availability of hospitalization for more intensive medical care if her symptoms worsen; and (2) Petitioner cannot challenge the conditions of her confinement through a writ of habeas corpus. (Doc. 45.)[2]

## III. Discussion

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer

---

[2] Respondents' second argument is rejected for the reasons provided in the Court's previous Order.

irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). If a movant "can only show that there are 'serious questions going to the merits' — a lesser showing than likelihood of success on the merits— then a[n] [] injunction may still issue if the 'balance of hardships tips sharply in the [movant's] favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under the serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

### A. Likelihood of Success on the Merits

Generally, injunctive relief is unavailable for a claim that is distinct and separate from the claims at issue in underlying operative pleading. *See Pac. Radiation Oncology, LLC v. Queen's Med. Center*, 810 F.3d 631, 636 (9th Cir. 2015). However, given the urgency and unprecedented nature of the circumstances, and Petitioner's expressed intention to file an amended petition, the Court finds this is one of those rare instances that fall exception to the rule.

In the Ninth Circuit, to prevail on a claim of inadequate medical care under the Due Process Clause of the Fifth Amendment,[3] a detainee must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious;

---

[3] Due process claims brought under the Fifth and Fourteenth Amendments are analyzed under the same standard. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976).

- 4 -

and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1070 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473 (2015)).

The Court finds that there are serious questions going to, if not a likelihood of success on, the merits of Petitioner's claim. First, Respondents have made an intentional decision with respect to the conditions under which Petitioner is detained; after returning Petitioner from the hospital, Respondents made the decision to detain her in medical isolation – indistinguishable from solitary confinement –[4] pursuant to the protocols that they apply to *any* detainee who contracts COVID-19, without regard to whether her underlying medical condition required alternative placement or care.

Second, Petitioner has shown that the conditions under which she is detained, which offer limited medical monitoring and care, pose a substantial risk of serious harm to her health. There can be no dispute that Petitioner's COVID-19 diagnosis and associated symptoms are serious, and the evidence presented shows that the trajectory of the disease for an individual with diabetes is not only unpredictable, but it is potentially deadly, and demands frequent monitoring. Patients with diabetes who contract COVID-19 have a higher risk of stroke. (Doc. 46-4, Ernst Decl. ¶ 7.) A May 2020 research study showed that "[i]n people with diabetes hospitalized for COVID-19, the primary outcome (death or tracheal intubation for assisted mechanical ventilation within 7 days of admission) occurred in 29.0% and death (on day 7) in 10.6%." (Doc. 43-7 at 2.) "Microvascular and

---

[4] Petitioner is housed alone in a closed cell with a metal door that "contains a slot in the middle through which items such as food and the telephone are passed" and "a metal grate with many small holes toward the top of the door" through which detention officers can "peer in at her." (Doc. 34-4, Valenzuela Decl. ¶¶ 12-13.) She receives all services in-cell and her access to all spaces other than the unit shower has been suspended. (*See* Doc. 45-3.)

macrovascular diabetic complications were found in 46.8% and 40.8% of cases, respectively." (*Id.* at 1.) The National Institute of Health ("NIH") cautions that "[a]ll patients with symptomatic COVID-19 and risk factors for severe disease should be closely monitored. In some patients, the clinical course may rapidly progress."[5] (Doc. 43 at 6, n.1.) "[B]lood oxygen levels can drop quickly with little warning-and if a COVID-19 patient is isolated they may be unable to get medical help before losing consciousness." (Doc. 46-3, Greifinger ¶ 6.) In instances of diminishing symptoms, COVID-19 patients can relapse and have a "sudden and precipitous decline[] in health." (Ernst Decl. ¶ 5.)

Lastly, Petitioner has shown that Respondents have failed to take objectively reasonable measures to abate the risk of harm. It is undisputed that Respondents are familiar with Petitioner's medical condition and know – as discussed in the Court's prior decision – that there are serious attendant risks that COVID-19 poses to individuals with diabetes. In light of those risks, close monitoring and frequent testing of Petitioner is reasonable and objectively necessary. Yet, Respondents do not frequently monitor or examine Petitioner. Nor do they identify any other specific precautionary measure they have taken to ensure Petitioner's wellbeing given the elevated risks. Indeed, they offer no justification or reasoning for why Petitioner has been provided with the same limited degree of care that is provided to non-vulnerable detainees.

## B.     Likelihood of Irreparable Harm

Under the reasoning above, which the Court sees no need to repeat, Petitioner has established a likelihood of imminent and irreparable harm – severe illness or death – in the absence of relief.

## C.     Public Interest and Balance of Equities

Where the government is the opposing party, the public interest and balance of equities factors merge, and here, they weigh in Petitioner's favor. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioner faces irreparable harm to both her constitutional rights

---

[5] https://www.covid19treatmentguidelines.nih.gov/overview/management-of-covid-19/ (last accessed Jun. 15, 2020).

and her health. Public interest favors constitutional compliance. *See Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011); *N.D. v. Haw. Dep't of Educ.,* 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t is obvious that compliance with the law is in the public interest."). While the Court is sympathetic to the increased burden placed on detention and medical staff to attend to each detainee's medical needs during the pandemic, inadequate care aggravates the already heighted risk COVID-19 poses to vulnerable detainees like Petitioner. *See Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004).

### D. Relief

As before, Petitioner has not *yet* demonstrated that the facts demand the extraordinary remedy of release. Respondents state that if Petitioner "requires a higher level of observation or care than that which can be provided to her in Bravo 600, EDC has two double-bunk negative pressure cells located in the Medical Unit." (Figueroa Decl. ¶ 23.) Thus, while Petitioner has demonstrated that she lacks the necessary degree of monitoring and treatment in Bravo 600, she has not shown that Respondents are either unable or unwilling to provide her with the care she requires in EDC, such that her release is the only effective remedy. Accordingly, the Court will require Respondents to transfer Petitioner to the medical unit and to ensure she receives frequent and thorough examinations appropriate to monitor the progression of her infection in light of her underlying medical conditions.

**IT IS ORDERED:**

(1) Petitioner's Motion for Leave to Exceed Page Limit and for Extension of Time (Doc. 47) is **granted** and Petitioner's Reply in support of her Renewed Motion for Temporary Restraining Order (Doc. 46) is **accepted as filed**.

(2) Petitioner's Renewed Motion for Temporary Restraining Order (Doc. 43) is **granted in part** as follows:

(a) Respondents shall **immediately** transfer Petitioner to one of the negative pressure cells located in the Medical Unit for the purpose of providing Petitioner

1  with "a higher level of observation [and] care."

2  (b) Respondents shall closely monitor Petitioner's symptoms and
3  frequently test her vital signs throughout the day, including her pulse oximetry, provide
4  Petitioner with a thorough health examination at least once daily, and provide Petitioner's
5  counsel with her medical records as updated.

6  (c) Respondents shall file a Notice of Compliance no later than by close
7  of business on **June 17, 2020**.

8  (d) If Respondents are unable to house and provide Petitioner with the
9  medical care set forth above, Respondents shall immediately release Petitioner into the care
10 of her daughter, Leslie Rosales Mendoza, under conditions of supervision that Respondents
11 deem appropriate.

12 (e) The parties shall have until **June 22, 2020** to file a Joint Status Report.
13 Dated this 16th day of June, 2020.

Honorable Steven P. Logan
United States District Judge